1                    1
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
2                        MIAMI DIVISION
3                    CASE 09-22680-CIV-MGC
4    NICOLE MICHELLE DEFONTES
5                        Petitioner,
6        vs.
7    WARDEN, JOHN T. RATHMAN              MIAMI, FLORIDA
     CARLOS RODRIGUEZ                     OCTOBER 7, 2009
8    HARLEY LAPPIN                        WEDNESDAY - 1:30 P.M.
9                    Respondents.

     ------------------------------------------------------------
10
                    TRANSCRIPT OF HEARING
11           BEFORE THE HONORABLE MARCIA G. COOKE
                    UNITED STATES DISTRICT JUDGE
12   APPEARANCES:
13   FOR THE PETITIONER:   DANIEL SCOTT FRIDMAN, ESQ.
                            Holland and Knight, LLP
14                          701 Brickell Avenue, Ste. 3000
                            Miami, FL 33131
15                          305/789-7412
                            Email: daniel.fridman@hklaw.com
16                          DAVID MARKUS, ESQ.
                            169 East Flagler Street, Ste. 1200
17                          Miami, FL 33131
                            305/379-6667
18                          Email: dmarkus@markuslaw.com
     FOR THE RESPONDENTS:
19                          AMANDA KESSLER, A.U.S.A.
                            Office of the U.S. Attorney
20                          99 N.E. 4th Street
                            Miami, FL  33132 - 305/961-9273
21                          Email: Amanda.A.Kessler@usdoj.gov
     REPORTED BY:
22                          ROBIN M. DISPENZIERI, RPR
                            Official Federal Court Reporter
23                          United States District Court
                            400 North Miami Avenue, Ste. 11-2
24                          Miami, FL  33128 - 305/523-5158
                            Email: robinc1127@aol.com
25

                    TOTAL ACCESS COURTROOM REALTIME TRANSCRIPTION
                                October 7, 2009

1          THE COURT:  Appearing on behalf of the plaintiff.

2          MR. FRIDMAN:  Good afternoon, Your Honor.  Dan Fridman

3   and Monica Vila from the law firm of Holland and Knight on

4   behalf of the plaintiff, Nicole Michelle Defontes, and with me

5   today is co-counsel, David Markus.

6          THE COURT:  Mr. Markus, I'm not used to seeing you on

7   that side of the ledger.  It's a bit confusing for me.

8          MR. MARKUS:  I love it.

9          THE COURT:  And appearing on behalf of the defendant.

10         MS. KESSLER:  Amanda Kessler, Your Honor, from the

11  Assistant United States Attorney.

12         THE COURT:  Spectators may be seated.

13         You know, all of these years, counsel, I thought the

14  issue regarding poppy seeds was an urban myth.  Now I am

15  finding out that it is not.

16         MR. MARKUS:  We thought so too, Judge.  We have been

17  educated on this.  The problem, and Mr. Fridman is going to go

18  through this in a minute, but the problem is the government did

19  know about this, and forced us to go through, really,

20  unnecessary litigation and spend tens of thousands of dollars

21  to get to where we should have been a month ago.

22         Nicole is here with her parents and her family friend.

23  She has the good fortune of having a family who supports her.

24  She was able to hire Holland & Knight.  Be able to hire expert

25  witnesses.  Be able to send out subpoenas, file a civil law

1    suit, and was able to bring in another lawyer, myself, and had

2    the good fortune of Your Honor setting this hearing.  If the

3    Court had not set this hearing two weeks ago, she wouldn't have

4    been released yesterday.  She was released yesterday because,

5    eventually, the government realized it had nowhere to go and it

6    was going to lose.

7            Mr. Fridman is going to go through all the facts and

8    detail where we are today.  I just want to initially tell the

9    Court what we are asking for today, and let it go over to

10   Mr. Fridman.

11           Nicole was on house arrest when she got taken into

12   custody for this minuscule amount of morphine in her system.

13   She was supposed to be off of BOP custody, off the books on

14   October 18, 2009, in a couple of weeks.  Instead, has spent the

15   last month plus in jail.

16           THE COURT:  So she hadn't begun the supervised release

17   portion of her term?

18           MR. MARKUS:  That is right.

19           THE COURT:  She was still in this area of leaving

20   incarceration, and beginning supervised release.

21           MR. MARKUS:  That's right, Judge.  She was still

22   technically in Bureau of Prisons custody.  The way it stands

23   right now on the BOP web site, she is still listed in their

24   custody until January 31, 2011.  When, before all of this

25   happened, she was supposed to be out of their custody in

1  October.

2        Our concern is she is now back having to report to the

3  halfway house where they are still taking drug samples from

4  her.  Based on things that have been said to her, we have a

5  very strong belief that they are going to retaliate.  What we

6  are asking for now is, instead of having this two week period,

7  for her to be released from BOP supervision now.

8        THE COURT:  I am going to hear from the United States.

9        The only thing that I thought was odd, Mr. Markus, and

10  maybe after five years, I have become a little cynical, it

11  takes me a month to get someone from Coleman to FDC for a

12  hearing, and it's, like, all of a sudden this occurred with

13  whiplash speed, and it's just a little disconcerting to the

14  Court that the BOP seems to act quickly when it wants to, and

15  when we need other things, it's the proverbial -- and I don't

16  want to speak until I hear from the Assistant United States

17  Attorney.  I want to know all the facts.

18        It sort of seems like when it's something they want to

19  do, it's like who is saying bolt on the track.  They're just

20  Johnny on the spot.

21        MR. MARKUS:  It's hard not to look at it cynically.  I

22  will let Mr. Fridman sort of layout what happened, because it

23  is truly breathtaking.  I will hand over the baton to keep the

24  bolt analogy going for Mr. Fridman.

25        MR. FRIDMAN:  Good afternoon, Your Honor.

1          THE COURT:  Good afternoon, Mr. Fridman.

2          MR. FRIDMAN:  What I would like to do is briefly, I

3  know you have looked at our pleadings, go through exactly what

4  has happened in the last couple weeks, and give you a brief

5  overview of the case.  A lot has happened and a lot has

6  happened very quickly.  As you noted, kind of shocking conduct,

7  the way she was released.  On October 10, 2009, that was two

8  months ago --

9          THE COURT:  October 10th or September 10th?

10          MR. FRIDMAN:  I'm sorry.  August 10, 2009, two months

11  ago, Nicole Defontes was removed from home confinement and

12  imprisoned at FDC Miami.  Before that she had job at a company

13  called the Treatment Center.  She had been promoted through

14  that job.  She was doing great there.

15          She had numerous drug tests at the halfway house,

16  Salvation Army Residential Re-entry Center.  She was doing

17  great.  Suddenly, she is called to the Salvation Army Halfway

18  House.  They take her into custody.  They put her for a night

19  at the Palm Beach County Jail and then transport her down to --

20          THE COURT:  Who actually are the people that show up

21  at the halfway house?  Is it somebody from the Bureau of

22  Prisons?

23          MR. FRIDMAN:  I believe it was the U.S. Marshals.

24          She was imprisoned at FDC Miami.  Now we know that was

25  based on a lie.  The lie was that she failed a urine test that

1  was administered by the Salvation Army Residential Re-entry
2  Center.  The stakes were high for her.  Based on her exemplary
3  behavior as an inmate, she had earned about two hundred
4  sixty-six days off her sentence in good time credits.  She had
5  earned twelve months off her sentence from participating in the
6  Residential Drug Treatment Program.  This is the program that
7  all inmates that come before you want to get into because they
8  can get twelve months off of their sentence, but it's a very
9  arduous process.

10         THE COURT:  She wasn't originally sentenced out of
11  this district.  She was sentenced out of North Carolina?

12         MR. FRIDMAN:  That is correct, Your Honor.  Her
13  official release date was two months away, actually, this
14  month.  So we have evidence to suggest that the Salvation Army
15  Residential Re-entry Center had it in for her.

16         Just so you understand the relationship between the
17  Salvation Army and the Bureau of Prisons, they are under
18  government contract and they agree to run these half-way houses
19  using the Bureau of Prisons rules and regulations.  They report
20  ultimately to the Bureau of Prisons.  We now come to find out
21  that they held the first administrative hearing she was
22  entitled to, the Unit Discipline Committee hearing.  They held
23  it without her being there, why, because she had been taken
24  away.  She was in Miami.  They were up in West Palm Beach.
25  They tried, and convicted her at the Unit Disciplinary

1   Committee hearing --

2           THE COURT:  Was that at the Salvation Army?

3           MR. FRIDMAN:  That was at the Salvation Army.

4           THE COURT:  Even under Bureau of Prisons rules and

5   regulations, an inmate is entitled to be present unless they

6   are doing something to act out, escape, solitary confinement,

7   misbehavior, I don't know, somebody tell me.

8           MR. FRIDMAN:  That's right.  It's all in the Code of

9   Federal Regulations.  They are entitled to be there, unless

10  they wave their presence, which she didn't do, or escape, or

11  what they are relying on is she is not anywhere near it.  The

12  reason that she wasn't anywhere near it was because she was

13  taken away.  They had brought her down to Miami.

14          They held this hearing for her in absentia.  They

15  never told her about it.  They never gave her the result of it.

16  They never showed her any of the evidence.  They just convicted

17  her.

18          A person that signed the paperwork was a person by the

19  name of Ms. Reid.  She is one of the monitors in charge of that

20  place.  That name is going to come up again.

21          Now that Nicole is back at the Salvation Army

22  Residential Re-entry Center, she is not happy.  Ms. Reid is not

23  happy she is there.

24          THE COURT:  Is that where she spent last night?

25          MR. FRIDMAN:  That's right.

1    They found her guilty.  We have taped statements from

2  inmates describing serious problems at the Residential Re-entry

3  Center at the Salvation Army.  Including monitors, having sex

4  with inmates, drinking alcohol at the Residential Re-entry

5  Center.  Taking drugs from inmates.  We know that they have had

6  problems with their drug testing there before.  We know at

7  least one case where an inmate was actually sent away, just

8  like Nicole, and called back over there because they had

9  screwed it up.

10    We have actually reached out to the Office of

11  Inspector General Department of Justice, communicating with

12  them, and letting them know, and sharing the evidence that we

13  develop in this case.

14    Nicole and her father hired us to figure out what went

15  wrong.  She did not take any illegal drugs.  They couldn't

16  understand why they had gotten this result.

17    At first, we asked her to get her hair cut and get

18  independently tested at our expense.  Without having any

19  evidence from them, that was the best we could do for her was

20  to try to get an independent test of her hair.  The BOP

21  refused.  I spoke to them for two weeks on the phone to

22  different levels of supervision trying to get them to

23  accommodate this simple request to have someone come in to the

24  prison and cut her hair, and they refused to accommodate.  They

25  were arrogant, Judge, and they were dismissive.  They just

1  refused to listen.

2          We also wanted a copy of the laboratory report and

3  they wouldn't share it with us.  The laboratory report was the

4  key in this case.

5          Then I called the U.S. Attorney's Office.  I spoke to

6  Bob Senior, the first assistant.  He sent me to Wendy Jacobus

7  and then to Amanda Kessler.  I tried to get the U.S. Attorney's

8  Office, which was very professional with us, to talk some sense

9  into the Bureau of Prisons and say "I told them, I don't want

10 to sue you over this.  I don't think we need to.  I think we

11 can resolve this just by talking it through."  They refused.

12 They finally said "look, you are going to have to sue."  So we

13 did.

14         Right before that, on August 26, I wrote a lengthy

15 e-mail to the Bureau of Prisons legal liaison asking them to

16 postpone her final hearing, because after that first hearing

17 that she -- they didn't let her be at, she gets a final hearing

18 where they can impose sanctions.  It's called a Discipline

19 Hearing Officer Hearing.  I told her to postpone that hearing.

20 To let her call witnesses.  To turn over the laboratory report

21 to us and to let us do the hair drug test that we asked.

22         What they did next, after I sent the e-mail at 7:00

23 p.m. was shocking.  They put her in solitary confinement.  They

24 put her in the SHU.  The next morning they held that

25 Disciplinary Officer Hearing, even though I had been talking to

1  them.

2       Lisa Kaye, who was one of the people I copied on that

3  August 26th e-mail, she is the one that personally brought the

4  paperwork to Nicole pre-filled out about her rights and

5  everything.

6       THE COURT:  When you say pre-filled out, what do you

7  mean?

8       MR. FRIDMAN:  She had already checked all the boxes

9  saying I don't want to call witnesses, I don't want to do this,

10 I don't want to do that and just told Nicole, sitting there

11 handcuffed, to sign the paperwork because they were going to

12 have the hearing right then and there.

13      On the paperwork, if you look at it, Ms. Kaye had

14 written the hearing to be held A.S.A.P.  They didn't want the

15 lawyers to even have a shot at this.  They didn't want Nicole

16 to try to defend herself.  These proceedings were a sham.

17      So, what happened?  They held her hearing and

18 surprise, she was found guilty.  She was found guilty.  The

19 hearing officer took away about one hundred one of her good

20 time credit days.  Took away the twelve months that she had

21 earned from the drug treatment program, so that made her

22 release date from two weeks from now, to January 31, 2011.

23 Almost a year and a half more in prison than she would have had

24 to spend.

25      To add insult to injury, as part of her punishment,

1  they put her in solitary confinement for seventeen days total.

2  In that time we hadn't heard a word from her.  She was in

3  contact with us before that.  She couldn't call her attorneys.

4  She couldn't call us.  I didn't find out until four or five

5  days after the hearing that she had been tried and convicted.

6  Meanwhile, I am sending e-mails to the Bureau of Prisons saying

7  I need an answer on the hair tests.  What is going on?

8  Silence.

9        We filed our law suit.  We asked the government for

10  discovery.  The government opposed our request for discovery.

11  Apparently, you are not entitled to be able to build a case to

12  defend yourself.  That was their position.  We sent a third

13  party subpoena to the laboratory the government used to test

14  her urine sample.  Thankfully, the laboratory responded quickly

15  to us.

16        THE COURT:  Is that the information in your original

17  petition?

18        MR. FRIDMAN:  This information we didn't have in our

19  petition when we filed it.  This is new information we got

20  right before we filed our brief on Friday.

21        In the laboratory report, Judge, was the key to this

22  whole case.  It showed that the minuscule amount of morphine

23  that was found in her urine was far below the actual cut off

24  that the Bureau of Prisons uses to find that someone actually

25  failed a drug test.  Her urine sample was minuscule, it

1  measured at one hundred nanograms per milliliter.

2          We found the actual contract between the Bureau of

3  Prisons and the Salvation Army, the statement of work.  This is

4  the agreement that the Salvation Army is supposed to follow.

5  That showed that the cut off for morphine was three hundred

6  nanograms.  Her finding was a 3rd less than what should have

7  been reported as a positive.

8          THE COURT:  You are saying the original report of a

9  positive should never have happened.

10         MR. FRIDMAN:  The original report of positive from the

11  Salvation Army to the Bureau of Prisons should never have been

12  reported as positive, right.  That laboratory is using a cut

13  off that they should not have been using.  They should have

14  been using a cut off of three hundred not one hundred to report

15  a positive.

16         This is the reason I am told by the government, why

17  she was released, because they finally agreed that she should

18  never have been put through this process to begin with.  It's

19  lucky for her that we actually got our hands on the laboratory

20  report which they had the whole time.

21         The other thing we found was that that minuscule

22  amount of morphine was consistent with the ingestion of poppy

23  seeds from eating sandwiches.

24         It's extraordinary.  In our petition we have a letter

25  from the government's lab, the one that signed off on her

1    positive report.  They said we can't say for certain this was

2    from drug use or poppy seeds, because it's such a small amount.

3    This is what the government relied on to find her guilty.

4            Judge, the government had that lab report the whole

5    time.  They had it right in front of them.  Had they not rushed

6    to judgment, had they bothered to return my phone calls, talked

7    to me about this case, we could have avoided the cost and

8    expense of this case.  We could have avoided the cost and

9    expense of this law suit.  The one bright spot in this case,

10   and I think it's the reason that Nicole is out of prison today,

11   is Amanda Kessler, the Assistant United States Attorney.  I

12   think she did her job professionally, and I think she

13   represents what the Department of Justice should stand for.  I

14   think she is responsible for this.  I don't think the Bureau of

15   Prisons is.

16           Here is where we are now.  Nicole is no longer

17   incarcerated, but in some ways she is in a worse position than

18   she was last week.  They sent her back to the Salvation Army,

19   RRC.

20           THE COURT:  She was never in custody there.

21           MR. FRIDMAN:  When she was put through the early

22   release program, she spent some months in custody living there

23   while she was working.  Then from there, they transitioned her

24   to home confinement, where she could still live at her father's

25   house and go to work.  She was living there for a period of

1  time, but while she is on home confinement, she still has to

2  report to them.  She has to go see them twice a week.  She has

3  to be drug tested by them.  She has to call them every day to

4  tell them when she gets to work, and she has to give them part

5  of her paycheck.

6          This is a business to them.  This is a business to the

7  Salvation Army, they make money off of this.  She was giving

8  them, I think it was half --

9          THE COURT:  What would have been the date of her

10  traditional supervised release, had all of this not happened?

11          MR. FRIDMAN:  Had this not happened, we think, based

12  on our calculations, October 18, 2009.  That's our calculation.

13          Judge, the scary part of this case, and this has

14  really had an impact on me, personally, this case would never

15  have seen the light of day, but for the fact that Ms. Defontes

16  had the resources to hire lawyers, hire investigators, hire

17  experts and instruct them to do everything within their power

18  to get his daughter out and to prove her innocence.

19          Today, in the fees and costs, we have spent probably

20  over $70,000 to get to this point today.  It didn't have to be

21  this way, Judge.  It didn't have to be this way, but the BOP

22  dug in and fought.  They fought us every step of the way until,

23  I think, Judge, you setting this hearing for today put it very

24  much at issue for them, and they really had no choice.

25          THE COURT:  If I understand, the last item that you

1   filed, counselor, what you are seeking is to have her replaced

2   -- the remaining part of whatever, once we get those numbers

3   calculated, some sort of supervised release, not incarceration

4   at the halfway house.

5        MR. FRIDMAN:  That's right, Your Honor.  I think, that

6   in light of the fact that she spent the last two months, that

7   she should have been spending at home with her family, she

8   spent them behind bars and then seventeen days of it in

9   solitary, as punishment.  I think that more than adequately

10  discharges whatever last two weeks of her sentence she had

11  remaining.

12       I think having her reporting back to the Salvation

13  Army Residential Re-entry Center is asking for trouble.  I

14  think they have it in for her and they are going to set her up.

15  Be honest, look at how they did this.  We are asking for her to

16  just immediately begin her supervised release so she can report

17  to U.S. Probation, which is supervised by the Courts, and be

18  done with this.  I think that is the best resolution.

19       We are also asking for the Court to grant us leave to

20  brief the attorneys' fees issue.  We would like to seek our

21  attorneys' fees and costs.  They needlessly had to spend to get

22  us to this point today.  I hope that by doing that it will

23  deter the Bureau of Prisons from treating prisoners and inmates

24  the way that she was treated, and to actually appoint attorneys

25  that are trying to talk to them about a serious matter, with

16

1  some respect and responsiveness, which they certainly didn't do

2  in this case.  That is it in a nutshell for us.

3          THE COURT:  Let me here from Ms. Kessler.

4          Good afternoon, Ms. Kessler.  Let me ask this

5  question because I do try to keep an open mind.  Is there

6  anything that Mr. Fridman said that is not true?

7          MS. KESSLER:  Well, as an initial matter, actually,

8  the reason that we are here today, and we would not be here but

9  for this, if Mr. Fridman's allegations are correct, and that

10  this was caused by poppy seeds, then Ms. Defontes has actually

11  violated her community based program agreement that she signed

12  when she entered the Salvation Army Residential Re-entry

13  Program, because ingesting poppy seeds is prohibited for this

14  very reason.

15          THE COURT:  That's part of her contract?  She can't

16  have a Kaiser roll with poppy seeds on it?

17          MS. KESSLER:  It is, Your Honor, yes.  It is part of

18  the contract just to avoid problems like this.

19          THE COURT:  That is contained in the contract?

20          MS. KESSLER:  It is, Your Honor.  I have a copy if you

21  would like to see it.

22          THE COURT:  Yes, please.

23          MR. FRIDMAN:  Your Honor, this is the first time that

24  we are seeing this.  We have asked for these kind of documents

25  before.  This is the first time that I am getting this.

1        MS. KESSLER:  I only just received it myself, Your

2   Honor.

3        THE COURT:  Not surprised by that one.  What

4   paragraph?

5        MS. KESSLER:  If you turn to the second page, it's

6   paragraph three.  It's also paragraph three on the first page

7   as well.

8        THE COURT:  You know, I see it, but, you know, I can

9   imagine somebody would say, "okay, I get that, but a poppy seed

10  roll?"  That's not even a major component.  Let's assume even

11  that this violates it.  It doesn't meet your minimum standard.

12  So it seems, at some point, someone should have said when they

13  saw the test, "inmate number X, we see there is a positive.

14  Have you been complying with all of the" -- you don't meet the

15  minimum threshold even for your violation.

16       MS. KESSLER:  We understand that, Your Honor, that is

17  why Ms. Defontes was released yesterday.  I would like to point

18  out that the toxicology report that was sent to the Salvation

19  Army was actually incorrect.  I spoke to the toxicology lab

20  yesterday, the way that they are supposed to present the

21  reports, when they get a negative result, they do a two-phase

22  test.

23       They do an initial test, and all it does is show

24  positive or negative.  If they get a positive on the initial

25  test, they then do a confirmatory test and they get an actual

1  number.  The way they are supposed to do it, if they get a

2  positive and a confirmatory test.  If the number falls below

3  the BOP standards, they are supposed to tell the BOP that it

4  was a negative test, and no numbers are supposed to appear on

5  the page.

6          THE COURT:  The initial test falls below the standard.

7          MS. KESSLER:  The initial test only shows a positive

8  or a negative.  The initial test in the lab showed a positive.

9  So, they should have sent a report to the Salvation Army

10 letting them know that this was a negative test with none

11 detected.

12         THE COURT:  So, instead of having that happen, U.S.

13 Marshals come seize her and bring her to the federal detention

14 center.  That's the second prong that occurred here.

15         MS. KESSLER:  There was a positive lab report sent

16 from the lab --

17         THE COURT:  Because of that negligence, she is

18 arrested and brought to FDC.  Don't paint it any better than it

19 is.  That's what happened.

20         MS. KESSLER:  That is what happened, Your Honor.

21         THE COURT:  Somebody screwed up.  People should be in

22 jail who should be in jail.  Don't get me wrong.  You do wrong,

23 that's my belief.  That's why we have the building across the

24 street.

25         On the other hand, the Bureau of Prisons did not

 1  follow their own procedure, so she was arrested, brought here,

 2  and then a hearing was held where she was not present.

 3         MS. KESSLER:  She does not have to be present at that

 4  hearing under the Code of Federal Regulations.  She was present

 5  for her DHO hearing, Your Honor, where she had the opportunity

 6  to present documentary evidence and witnesses.  She did sign

 7  the form saying she did not wish to present either.  DHO --

 8         THE COURT:  Do you understand why I might not believe

 9  that's how that happened?

10         MS. KESSLER:  I'm sorry, Your Honor.  The DHO also

11  reviewed her rights with her, asked her if she wanted to call

12  any witnesses or present any evidence.  She said, "no."

13         THE COURT:  I am sorry that you were sent to be the

14  sacrificial lamb on this, I really am.

15         MS. KESSLER:  It's okay, Your Honor.

16         THE COURT:  When this happens in other countries, we

17  call up Amnesty International and we say, "you know, not

18  full-fledged hearing, everybody in this case knew she had a

19  lawyer."  Why should I believe that now she is going to waive

20  that right.  I know she may not be entitled, but someone knew

21  that.  They have been in communication with a lawyer.  This

22  isn't like somehow, well, I want a lawyer now.  This lawyer had

23  been emailing, calling, writing, and now, all of a sudden, this

24  hearing has to be held ASAP.

25         MS. KESSLER:  According to the DHO the hearing was

1  held in the ordinary course of business.  He scheduled the
2  hearings like he schedules all of his other hearings.  He held
3  it on a day where he typically holds hearings.  There was
4  nothing special about this particular hearing.

5           THE COURT:  I don't believe it.  I just don't.

6           I think, but for the fact of this defendant having
7  resources, she would be in the FDC supervised release gulag.  I
8  apologize for the use of that term.  That's why we have
9  regulations.  That's why we have rules.  That's why people are
10 supposed to follow them.

11          What really concerns me more than Ms. Defontes,
12 because, obviously, people care about her an those people who
13 care about her have a checkbook.  How many of those people over
14 there don't?

15          Like I said, before two weeks ago, I thought the poppy
16 seed defense was an urban myth.  I really did.  Maybe it still
17 is, but your own reporter, from the documents presented in this
18 case, said it's not.  I didn't make this up.  That's what your
19 people said.

20          MS. KESSLER:  She shouldn't have been eating the poppy
21 seeds, Your Honor.

22          THE COURT:  I am going to count to ten before I
23 respond.  But, anyway.

24          She's now back in the Salvation Army custody?

25          MS. KESSLER:  She is.  My understanding is that she is

```
 1   going to be put back into home confinement.  I don't have an
 2   exact --
 3              THE COURT:  As quickly as she was taken from Palm
 4   Beach to FDC?
 5              MS. KESSLER:  I was told that it was going to happen
 6   today, Your Honor.  I can't promise that.  That is what I was
 7   told over the phone yesterday.
 8              MR. FRIDMAN:  Your Honor, my understanding from
 9   Nicole, is that she was indeed released from having to live at
10   the Salvation Army RRC today, before she went to court.
11   However, she is still tied to them because she still needs to
12   report to them twice a week.  She needs to call in to them when
13   she leaves her home and goes places.  She needs to be drug
14   tested by them.
15              In fact, yesterday, after she was released they let
16   her go from FDC, they left her outside.  Her father picked her
17   up and drove her to the Salvation Army.  When they got there,
18   they drug tested her.  I guess they thought in a three-hour
19   trip there was going to be an issue, or maybe there was drugs
20   going on in FDC Miami, so they drug tested her.  We asked,
21   based on the advice from the experts that we hired in this
22   case, we asked them to do a split sample for her because  we
23   don't trust them.  Their procedures are messed up.  Their
24   personnel, they are not competent.  We asked them to do split
25   sample, which is to split the urine sample into two, and send
```

1   one to one lab and one to another lab, just in case.  They

2   refused.

3         We had Mr. Carlos Rodriguez who is a respondent in

4   this case.  He is actually the person responsible for sending

5   her to FDC, Miami, based on my conversations with him.  He said

6   "no, she is not getting a split sample."  She has got to do a

7   urine test right then and there under their own rules.  They

8   wanted to take Mr. Defontes out of there, so he couldn't

9   witness it.  It was a complete mess.  Now she has got to still

10  be dependent on them.

11        THE COURT:  This is what I'm going to do.  There are,

12  obviously, the issues remaining, her good time, all those

13  issues, whether or not she is going to get credit.  Those are

14  issues we can take up at another day, and another hearing.

15        This is what is going to happen today.  Mr. Markus, I

16  know you know how to do this.  I want you to take your client

17  to the U.S. Probation Office here.  From today forward she is

18  under their care and supervision.  She is to abide by their

19  rules concerning urinalysis, drug testing, all of the rules

20  that she would have to obey, which I am certain is part of her

21  original supervised release order from North Carolina.

22        Any urine samples are to be taken from the facility or

23  in the manner that our United States Probation Office takes

24  them here.  If there is any issue relating to that, Mr. Markus

25  and Mr. Fridman, at U.S. Probation, please have the appropriate

1    officer call me.

2         Until such time as the other matters are resolved, she

3    is to reside at the parental home.  What is the address of

4    that, Mr. Fridman?

5         THE DEFENDANT:  8505 Southwest Sea Captain Drive,

6    Stuart, Florida 34997.

7         THE COURT:  Are you working, Ms. Defontes?

8         THE DEFENDANT:  Yes.

9         THE COURT:  What is your job?

10        THE DEFENDANT:  They are going to put me in medical

11   records.  I can start on Monday.

12        THE COURT:  Would it be medical records at the

13   Salvation Army, or somewhere else?

14        THE DEFENDANT:  No, it's medical records at the

15   Treatment Center, where I was working before.

16        THE COURT:  And what are your hours?

17        THE DEFENDANT:  He is going to give me 9 to 5.  Five

18   days a week.

19        THE COURT:  Do you drive to that office?

20        THE DEFENDANT:  I do.

21        THE COURT:  Until we get the remaining matters

22   resolved in this case, you are going to be on curfew.  That

23   means from 11 p.m. to 6:00 a.m. you are to be at that address

24   that you just named.  That might change once we get all the

25   other issues worked out.  I want that for now.

24

1       MR. FRIDMAN:  Your Honor, one other pending matter is

2  we would like to seek attorney's fees, costs and sanctions.

3       THE COURT:  I think we have the issue to resolve about

4  what her actual release date is going to be from Bureau of

5  Prisons, et cetera, et cetera.

6       Talk to the United States Attorney.  Maybe you guys

7  can work this out.  If you can't, let me know and we will set

8  up a hearing on all of those issues.

9       MR. FRIDMAN:  Thank you.  Your Honor.

10       THE COURT:  All right.

11            C E R T I F I C A T E

12    I hereby certify that the foregoing is an accurate

13  transcription of proceedings in the above-entitled matter.

14

15

16

                    /S/  ROBIN M. DISPENZIERI
17  _____   _____
       DATE FILED          ROBIN M. DISPENZIERI, RPR-CP
18                         Official Federal Court Reporter
                           United States District Court
19                         400 No. Miami Avenue, Ste. 11-2 Floor
                           Miami, FL  33128 - 305/523-5158
20                         Email:  robinc1127@aol.com

21

22

23

24

25

**A**

abide 22:18
able 2:24,24,25 3:1 11:11
above-entitled 24:13
absentia 7:14
accommodate 8:23,24
accurate 24:12
act 4:14 7:6
actual 11:23 12:2 17:25 24:4
add 10:25
address 23:3,23
adequately 15:9
administered 6:1
administrative 6:21
advice 21:21
afternoon 2:2 4:25 5:1 16:4
ago 2:21 3:3 5:8,11 20:15
agree 6:18
agreed 12:17
agreement 12:4 16:11
alcohol 8:4
allegations 16:9
Amanda 1:19 2:10 9:7 13:11
Amanda.A.Kessler@usdoj.gov
  1:21
Amnesty 19:17
amount 3:12 11:22 12:22 13:2
analogy 4:24
answer 11:7
anyway 20:23
apologize 20:8
Apparently 11:11
appear 18:4
APPEARANCES 1:12
appearing 2:1,9
appoint 15:24
appropriate 22:25
arduous 6:9
area 3:19
Army 5:16,17 6:1,14,17 7:2,3,21
  8:3 12:3,4,11 13:18 14:7 15:3
  16:12 17:19 18:9 20:24 21:10,17
  23:13
arrest 3:11
arrested 18:18 19:1
arrogant 8:25
ASAP 19:24
asked 8:17 9:21 11:9 16:24 19:11
  21:20,22,24
asking 3:9 4:6 9:15 15:13,15,19
assistant 2:11 4:16 9:6 13:11
assume 17:10
Attorney 1:19 2:11 4:17 13:11 24:6
attorneys 11:3 15:20,21,24
attorney's 9:5,7 24:2
August 5:10 9:14 10:3
Avenue 1:14,23 24:19
avoid 16:18
avoided 13:7,8
a.m 23:23
A.S.A.P 10:14
A.U.S.A 1:19

**B**

back 4:2 7:21 8:8 13:18 15:12
  20:24 21:1
bars 15:8
based 4:4 5:25 6:2 14:11 16:11
  21:21 22:5
baton 4:23
Beach 5:19 6:24 21:4
beginning 3:20
begun 3:16
behalf 2:1,4,9
behavior 6:3
belief 4:5 18:23
believe 5:23 19:8,19 20:5
best 8:19 15:18
better 18:18
bit 2:7
Bob 9:6
boit 4:19,24
books 3:13
BOP 3:13,23 4:7,14 8:20 14:21
  18:3,3
bothered 13:6
boxes 10:8
breathtaking 4:23
Brickell 1:14

brief 5:4 11:20 15:20
briefly 5:2
bright 13:9
bring 3:1 18:13
brought 7:13 10:3 18:18 19:1
build 11:11
building 18:23
Bureau 3:22 5:21 6:17,19,20 7:4
  9:9,15 11:6,24 12:2,11 13:14
  15:23 18:25 24:4
business 14:6,6 20:1

**C**

C 24:11,11
calculated 15:3
calculation 14:12
calculations 14:12
call 9:20 10:9 11:3,4 14:3 19:11,17
  21:12 23:1
called 5:13,17 8:8 9:5,18
calling 19:23
calls 13:6
can't 13:1 16:15 21:6 24:7
Captain 23:5
care 20:12,13 22:18
Carlos 1:7 22:3
Carolina 6:11 22:21
case 1:3 5:5 8:7,13 9:4 11:11,22
  13:7,8,9 14:13,14 16:2 19:18
  20:18 21:22 22:1,4 23:22
caused 16:10
center 5:13,16 6:2,15 7:22 8:3,5
  15:13 18:14 23:15
certain 13:1 22:20
certainly 16:1
certify 24:12
cetera 24:5,5
change 23:24
charge 7:19
checkbook 20:13
checked 10:8
choice 14:24
civil 2:25
client 22:16
Code 7:8 19:4
Coleman 4:11
come 6:7,20 7:20 8:23 18:13
Committee 6:27 7:1
communicating 8:11
communication 19:21
community 16:11
company 5:12
competent 21:24
complete 22:9
complying 17:14
component 17:10
concern 4:2
concerning 22:19
concerns 20:11
conduct 5:6
confinement 5:11 7:6 9:23 11:1
  13:24 14:1 21:1
confirmatory 17:25 18:2
confusing 2:7
consistent 12:22
contact 11:3
contained 16:19
contract 6:18 12:2 16:15,18,19
conversations 22:5
convicted 6:25 7:16 11:5
COOKE 1:11
copied 10:2
copy 9:2 16:20
correct 6:12 16:9
cost 13:7,8
costs 14:19 15:21 24:2
couldn't 8:15 11:3,4 22:8
counsel 2:13
counselor 15:1
count 20:22
countries 19:16
County 5:19
couple 3:14 5:4
course 20:1
court 1:1,22,23 2:1,6,9 12 3:3,9,16
  3:19 4:8,14 5:1,9,20 6:10 7:2,4
  7:24 10:6 11:16 12:8 13:20 14:9
  14:25 15:19 16:3,15,19,22 17:3
  17:8 18:6,12,17,21 19:8,13,16

20:5,22 21:3,10 22:11 23:7,9,12
  23:16,19,21 24:3,10,18,18
Courts 15:17
co-counsel 2:5
credit 10:20 22:13
credits 6:4
curfew 22:22
custody 3:12,13,22,24,25 5:18
  13:20,22 20:24
cut 8:17,24 11:23 12:5,12,14
cynical 4:10
cynically 4:21

**D**

Dan 2:2
DANIEL 1:13
daniel.fridman@hklaw.com 1:15
date 6:13 10:22 14:9 24:4,17
daughter 14:18
David 1:16 2:5
day 14:3,15 20:3 22:14
days 6:4 10:20 11:1,5 15:8 23:18
defend 10:16 11:12
defendant 2:9 20:6 23:5,8,10,14
  23:17,20
defense 20:16
Defontes 14:2:4 5:11 14:15 16:10
  17:17 20:11 22:8 23:7
Department 8:11 13:13
dependent 22:10
describing 8:2
detail 3:8
detected 18:11
detention 18:13
deter 15:23
develop 8:13
DHO 15:7,10,25
didn't 7:10 9:17 10:14,15 11:4,18
  14:20,21 16:1 20:18
different 8:22
discharges 15:10
Disciplinary 6:25 9:25
Discipline 6:22 9:18
disconcerting 4:13
discovery 11:10,10
dismissive 8:25
DISPENZIERI 1:22 24:16,17
district 1:1,11,23 6:11 24:18
DIVISION 1:2
dmarkus@markuslaw.com 1:18
documentary 19:6
documents 16:24 20:17
doesn't 11:21
doing 5:14,16 7:6 15:22
dollars 2:20
don't 4:15 7:7 9:9,10 10:9,9,10
  13:14 17:14 18:18,22 20:5,5,14
  21:1,23
drinking 8:4
drive 23:5,19
drove 21:17
drug 4:3 5:15 6:6 8:6 9:21 10:21
  11:25 13:2 14:3 21:13,18,20
  22:19
drugs 8:5,15 21:19
dug 14:22

**E**

E 24:11,11
early 13:21
earned 6:3,5 10:21
East 1:16
eating 12:23 20:20
educated 2:17
either 19:7
Email 1:15,18,21,24 24:20
emailing 19:23
entered 16:12
entitled 6:22 7:5,9 11:11 19:20
escape 7:6,10
ESQ 1:13,16
et 24:5,5
eventually 3:5
everybody 19:18
evidence 6:14 7:16 8:12,19 19:6
  19:12
exact 21:2
exactly 5:3
exemplary 6:2

expense 8:18 13:8,9
expert 2:24
experts 14:17 21:21
extraordinary 12:24
e-mail 9:15,22 10:3
e-mails 11:6

**F**

F 24:11
facility 22:22
fact 14:15 15:6 20:6 21:15
facts 3:7 4:17
failed 5:25 11:25
falls 18:2,6
family 2:22,23 15:7
far 11:23
father 8:14 21:16
father's 13:24
FDC 4:11 5:12,24 18:18 20:7 21:4
  21:16,20 22:5
federal 1:22 7:9 18:13 19:4 24:18
fees 14:19 15:20,21 24:2
figure 8:14
file 2:25
filed 11:9,19,20 15:1 24:17
final 9:16,17
finally 9:12 12:17
find 6:20 11:4,24 13:3
finding 2:15 12:6
firm 2:3
first 6:21 8:17 9:6,16 16:23,25 17:6
five 4:10 11:4 23:17
FL 1:14,17,20,24 24:19
Flagler 1:16
Floor 24:19
Florida 1:1,7 23:6
follow 12:4 19:1 20:10
forced 2:19
foregoing 24:12
form 19:7
fortune 2:23 3:2
forward 22:17
fought 14:22,22
found 8:1 10:18,18 11:23 12:2,21
  23:4 24:1,9
Fridman 1:13 2:2,2,17 3:7,10 4:22
  4:24,25 5:1,2,10,23 6:12 7:3,8
  7:25 10:8 11:18 12:10 13:21
  14:11 15:5 16:6,23 21:8 22:25
  23:4 24:1,9
Fridman's 16:9
friend 2:22
front 13:5
full-fledged 19:18

**G**

G 1:11
General 8:11
getting 16:25 22:6
give 5:4 14:4 23:17
giving 14:7
go 2:17,19 3:5,7,9 5:3 13:25 14:2
  21:16
goes 21:13
going 2:17 3:6,7 4:5,8,24 7:20 9:12
  10:11 11:17 15:14 19:19 20:22
  21:1,5,19,20 22:11,13,15 23:10
  23:17,22 24:4
good 2:2,23 3:2 4:25 5:1 6:4 10:19
  16:4 22:12
gotten 8:16
government 2:18 3:5 6:18 11:9,10
  11:13 12:16 13:3,4
government's 12:25
grant 15:19
great 5:14,17
guess 21:18
guilty 8:1 10:18,18 13:3
gulag 20:7
guys 24:6

**H**

hadn't 3:16 11:2
hair 8:17,20,24 9:21 11:7
half 10:23 14:8
halfway 4:3 5:15,17,21 15:4
half-way 6:18
hand 4:23 18:25

handcuffed 10:11
hands 12:19
happen 18:12 21:5 22:15
happened 3:25 4:22 5:4,5,6 10:17
  12:9 14:10,11 18:19,20 19:9
happens 19:16
happy 7 22,23
hard 4:21
HARLEY 1:8
hear 4 8,16
heard 11:2
hearing 1:10 3:2,3 4:12 6:21,22 7:1
  7:14 9:16,16,17,19,19,19,25
  10:12,14,17,19 11:5 14:23 19:2
  19:4,5,18,24,25 20:4 22:14 24:8
hearings 20:2,2,3
held 6:21,22 7:14 9:24 10:14,17
  19:2,24 20:1,2
high 6:2
hire 2:24,24 14:16,16,16
hired 8:14 21:21
holds 20:3
Holland 1:13 2:3,24
home 5:11 13:24 14:1 15:7 21:1,13
  23:3
honest 15:15
Honor 2:2,10 3:2 4:25 6:12 15:5
  16:17,20,23 17:2,16 18:20 19:5
  19:10,15 20:21 21:6,8 24:1,9
HONORABLE 1:11
hope 15:22
hours 23:16
house 3:11 4:3 5:15,18,21 13:25
  15:4
houses 6:18
hundred 6:3 10:19 12:1,5,14,14

I

illegal 8:15
imagine 17:9
immediately 15:16
impact 14:14
impose 9:18
imprisoned 5:12,24
incarcerated 13:17
incarceration 3:20 15:3
including 8:3
incorrect 17:19
independent 8:20
independently 8:18
information 11:16,18,19
ingesting 16:13
ingestion 12:22
initial 16:7 17:23,24 18:6,7,8
initially 3:8
injury 10:25
inmate 6:3 7:5 8:7 17:13
inmates 6:7 8:2,4,5 15:23
innocence 14:18
Inspector 8:11
instruct 14:17
insult 10:25
International 19:17
investigators 14:16
isn't 19:22
issue 2:14 14:24 15:20 21:19 22:24
  24:3
issues 22:12,13,14 23:25 24:8
item 14:25
it's 2:7 4:12,13,15,18,19,21 6:8 7:8
  9:18 12:18,24 13:2,10 17:5,6
  19:15 20:18 23:14
I'm 2:6 5:10 19:10 22:11

J

Jacobus 9:6
jail 3:15 5:19 18:22,22
January 3:24 10:22
job 5:12,14 13:12 23:9
JOHN 1:7
Johnny 4:20
Judge 1:11 2:16 3:21 8:25 11:21
  13:4 14:13,21,23
judgment 13:6
Justice 8:11 13:13

K

Kaiser 16:16
Kaye 10:2,13

keep 4:23 16:5
Kessler 1:19 2:10,10 9:7 13:11
  13:6,3,4,7,17,20 17:1,5,16 18:7,15
  18:20 19:3,10,15,25 20:20,25
  21:5
key 9:4 11:21
kind 5:6 16:24
knew 19:18,20
Knight 1:13 2:3,24
know 2:13,19 4:17 5:3,24 7:7 8:5,6
  8:12 17:8,8 18:10 19:17,20
  22:16,16 24:7

L

lab 12:25 13:4 17:19 18:8,15,16
  22:1,1
laboratory 9:2,3,20 11:13,14,21
  12:12,19
lamb 19:14
LAPPIN 1:8
law 2:3,25 11:9 13:9
lawyer 3:1 19:19,21,22,22
lawyers 10:15 14:16
layout 4:22
leave 15:19
leaves 21:13
leaving 3:19
ledger 2:7
left 21:16
legal 9:15
lengthy 9:14
letter 12:24
letting 8:12 18:10
Let's 17:10
levels 8:22
liaison 9:15
lie 5:25,25
light 14:15 15:6
Lisa 10:2
listed 3:23
listen 9:1
litigation 2:20
little 4:10,13
live 13:24 21:9
living 13:22,25
LLP 1:13
longer 13:16
look 4:21 9:12 10:13 15:15
looked 5:3
lose 3:6
lot 5:5,5
love 2:8
lucky 12:19

M

M 1:22 24:16,17
major 17:10
manner 22:23
MARCIA 1:11
Markus 1:16 2:5,6,8,16 3:18,21 4:9
  4:21 22:15,24
Marshals 5:23 18:13
matter 15:25 16:7 24:1,13
matters 23:2,21
mean 10:7
means 23:23
measured 12:1
medical 23:10,12,14
meet 17:11,14
mess 22:9
method 21:24
Miami 1:2,7,14,17,20,23,24 5:12,24
  6:24 7:13 21:20 22:5 24:19,19
Michelle 1:4 2:4
milliliter 12:1
mind 16:5
minimum 17:11,15
minuscule 3:12 11:22,25 12:21
minute 2:18
misbehavior 7:7
Monday 23:11
money 14:7
Monica 2:3
monitors 7:19 8:3
month 2:21 3:15 4:11 6:14
months 5:8,10 6:5,8,13 10:20
  13:22 15:6
morning 9:24
morphine 3:12 11:22 12:5,22

myth 2:14 20:16

N

name 7:19,20
named 23:24
nanograms 12:1,6
near 7:11,12
need 4:15 9:10 11:7
needlessly 15:21
needs 21:11,12,13
negative 17:21,24 18:4,8,10
negligence 18:17
never 7:15,15,16 12:9,11,18 13:20
  14:14
new 11:19
Nicole 1:4 2:4,22 3:11 5:11 7:21
  8:8,14 10:4,10,15 13:10,16 21:9
night 5:18 7:24
North 1:23 6:11 22:17
noted 5:6
number 17:13 18:1,2
numbers 15:2 18:4
numerous 5:15
nutshell 16:2
N.E 1:20

O

obey 22:20
obviously 20:12 22:12
occurred 4:12 18:14
October 1:7 3:14 4:1 5:7,9 14:12
odd 4:9
office 1:19 8:10 9:5,8 22:17,23
  23:19
officer 9:19,25 10:19 23:1
official 1:22 6:13 24:18
okay 17:9 19:15
once 15:2 23:24
open 16:5
opportunity 19:5
opposed 11:10
order 22:21
ordinary 20:1
original 11:16 12:8,10 22:21
originally 6:10
outside 21:16
overview 5:5

P

page 17:5,6 18:5
paint 18:18
Palm 5:19 6:24 21:3
paperwork 7:18 10:4,11,13
paragraph 17:4,6,6
parental 23:3
parents 2:22
part 10:25 14:4,13 15:2 16:15,17
  22:20
participating 6:5
particular 20:4
party 11:13
paycheck 14:5
pending 24:1
people 5:20 10:2 18:21 20:9,12,12
  20:13,19
period 4:6 13:25
person 7:18,18 22:4
personally 10:3 14:14
personnel 21:24
petition 11:17,19 12:24
Petitioner 1:5,13
phone 8:21 13:6 21:7
picked 21:16
place 7:20
places 21:13
plaintiff 2:1,4
pleadings 5:3
please 16:22 22:25
plus 3:15
point 14:20 15:22 17:12,17
poppy 2:14 12:22 13:2 16:10,13,16
  17:9 20:15,20
portion 3:17
position 11:12 13:17
positive 12:7,9,10,12,15 13:1
  17:13,24,24 18:2,7,8,15
postpone 9:16,19
power 14:17
presence 7:10

present 7:5 17:20 19:2,3,4,6,7,12
presented 20:17
pre-filled 10:4,6
prison 8:24 10:23 13:10
prisoners 15:23
Prisons 3:22 5:22 6:17,19,20 7:4
  9:9,15 11:6,24 12:3,11 13:15
  15:23 18:25 24:5
probably 14:19
Probation 15:17 22:17,23,25
problem 2:17,18
problems 8:2,6 16:18
procedure 19:1
procedures 21:23
proceedings 10:16 24:13
process 6:9 12:18
professional 9:8
professionally 13:12
program 6:6,6 10:21 13:22 16:11
  16:13
prohibited 16:13
promise 21:6
promoted 5:13
prong 18:14
prove 18:14
proverbial 4:15
punishment 10:25 15:9
put 5:18 9:23,24 11:1 12:18 13:21
  14:23 21:1 23:10
p.m 1:8 9:23 23:23

Q

question 16:5
quickly 4:14 5:6 11:14 21:3

R

R 24:11
RATHMAN 1:7
reached 8:10
realized 3:5
really 2:19 14:14,24 19:14 20:11,16
reason 7:12 12:16 13:10 16:8,14
received 17:1
records 23:11,12,14
refused 8:21,24 9:1,11 22:2
regarding 2:14
regulations 6:19 7:5,9 19:4 20:9
Reid 7:19,22
relating 22:24
relationship 6:16
release 3:16,20 6:13 10:22 13:22
  14:10 15:3,16 20:7 22:21 24:4
released 3:4,4 4:7 5:7 12:17 17:17
  21:9,15
relied 13:3
relying 7:11
remaining 15:2,11 22:12 23:21
removed 5:11
replaced 15:1
report 4:2 6:19 9:2,3,20 11:21 12:8
  12:10,14,20 13:1,4 14:2 15:16
  17:18 18:9,15 21:12
reported 1:21 12:7,12
reporter 1:22 20:17 24:18
reporting 15:12
reports 17:21
represents 13:13
request 8:23 11:10
reside 23:3
Residential 5:16 6:1,6,15 7:22 8:2
  8:4 15:13 16:12
resolution 15:18
resolve 9:11 24:3
resolved 23:2,22
resources 14:16 20:7
respect 16:1
respond 20:23
responded 11:14
respondent 22:3
Respondents 1:9,18
responsible 13:14 22:4
responsiveness 16:1
result 7:15 8:16 17:21
retaliate 4:5
return 13:5
reviewed 19:11
Re-entry 5:16 6:1,15 7:22 8:2,4
  15:13 16:12
right 3:18,21,23 7:8,25 9:14 10:12

11:20 12:12 13:5 15:5 19:20
22:7 24:10
rights 10:4 19:11
ROBIN 1:22 24:16,17
robinc1127@aol.com 1:24 24:20
Rodriguez 1:7 22:3
roll 16:16 17:10
RPR 1:22
RPR-CP 24:17
RRC 13:19 21:10
rules 6:19 7:4 20:9 22:7,19,19
run 6:18
rushed 13:5

**S**

S 24:16
sacrificial 19:14
Salvation 5:16,17 6:1,14,17 7:2,3
7:21 8:3 12:3,4,11 13:18 14:7
15:12 16:12 17:18 18:9 20:24
21:10,17 23:13
sample 11:14,25 21:22,25,25 22:6
samples 4:3 22:22
sanctions 9:18 24:2
sandwiches 12:23
saw 17:13
saying 4:19 10:9 11:6 12:8 19:7
scary 14:13
scheduled 20:1
schedules 20:2
SCOTT 1:13
screwed 8:9 18:21
Sea 23:5
seated 2:12
second 17:5 18:14
see 14:2 16:21 17:8,13
seed 17:9 20:16
seeds 2:14 12:23 13:2 16:10,13,16
20:21
seeing 2:6 16:24
seek 15:20 24:2
seeking 15:1
seen 14:15
seize 18:13
send 2:25 21:25
sending 11:6 22:4
Senior 9:6
sense 9:8
sent 8:7 9:6,22 11:12 13:18 17:18
18:9,15 19:13
sentence 6:4,5,8 15:10
sentenced 6:10,11
September 5:9
serious 8:2 15:25
set 3:3 15:14 24:7
setting 3:2 14:23
seventeen 11:1 15:8
sex 8:3
sham 10:16
share 9:3
sharing 8:12
She's 20:24
shocking 5:6 9:23
shot 10:15
shouldn't 20:20
show 5:20 17:23
showed 7:16 11:22 12:5 18:8
shows 18:7
SHU 9:24
side 2:7
sign 10:11 19:6
signed 7:18 12:25 16:11
Silence 11:8
simple 8:23
site 3:23
sitting 10:10
sixty-six 6:4
small 13:2
solitary 7:6 9:23 11:1 15:9
somebody 5:21 7:7 17:9 18:21
sorry 5:10 19:10,13
sort 4:18,22 15:3
SOUTHERN 1:1
Southwest 23:5
speak 4:16
special 20:4
Spectators 2:12
speed 4:13
spend 2:20 10:24 15:21

spending 15:7
spent 3:14 7:24 13:22 14:19 15:6,8
split 21:22,24,25 22:2
spoke 8:21 9:5 17:19
spot 4:20 13:9
stakes 6:2
stand 15:1
standard 17:11 18:6
standards 18:3
stands 3:22
start 23:11
statement 12:3
statements 8:1
States 1:1,11,23 2:11 4:8,16 13:11
22:23 24:6,18
Ste 1:14,16,23 24:19
step 14:22
street 1:16,20 18:24
strong 4:5
Stuart 23:6
subpoena 11:13
subpoenas 2:25
sudden 4:12 19:23
Suddenly 5:17
sue 9:10,12
suggest 6:14
suit 3:11 11:9 13:9
supervised 3:16,20 14:10 15:3,16
15:17 20:7 22:21
supervision 4:7 8:22 22:18
supports 2:23
supposed 3:13,25 12:4 17:20 18:1
18:3,4 20:10
surprise 10:18
surprised 17:3
system 3:12

**T**

T 1:7 24:11,11
take 5:18 8:15 22:8,14,16
taken 3:11 6:23 7:13 21:3 22:22
takes 4:11 22:23
talk 9:8 15:25 24:6
talked 13:6
talking 9:11,25
taped 8:1
technically 3:22
tell 3:8 7:7 14:4 18:3
ten 20:22
tens 2:20
term 3:17 20:8
test 5:25 8:20 9:21 11:13,25 17:13
17:22,23,25,25 18:2,4,6,7,8,10
22:7
tested 8:18 14:3 21:14,18,20
testing 8:6 22:19
tests 5:15 11:7
Thank 24:9
Thankfully 11:14
that's 3:21 7:8,25 14:12 15:5 16:15
17:10 18:14,19,23,23 19:9 20:8
20:9,9,18
They're 4:19
thing 4:9 12:21
things 4:4,15
think 9:10,10 13:10,12,12,14,14
14:8,11,23 15:5,9,12,14,18 20:6
24:3
third 11:12
thought 2:13,16 4:9 20:15 21:18
thousands 2:20
three 12:5,14 17:6,6
three-hour 21:18
threshold 17:15
tied 21:11
time 6:4 10:20 11:2 12:20 13:5
14:1 16:23,25 22:12 23:2
today 2:5 3:8,9 13:10 14:19,20,23
15:22 16:8 21:6,10 22:15,17
told 7:15 9:9,19 10:10 12:16 21:5,7
total 11:1
toxicology 17:18,19
track 4:19
traditional 14:10
TRANSCRIPT 1:10
transcription 24:13
transitioned 13:23
transport 5:19
treated 15:24

treating 15:23
treatment 5:13 6:6 10:21 23:15
tried 6:25 9:7 11:5
trip 21:19
trouble 15:13
true 16:6
truly 4:23
trust 21:23
try 8:20 10:16 16:5
trying 8:22 15:25
turn 9:20 17:5
twelve 6:5,8 10:20
two 3:3 4:6 5:7,10 6:3,13 8:21
10:22 15:6,10 20:15 21:25
two-phase 17:21
typically 20:3

**U**

ultimately 6:20
understand 6:16 8:16 14:25 17:16
19:8
understanding 20:25 21:8
Unit 6:22,25
United 1:1,11,23 2:11 4:8,16 13:11
22:23 24:6,18
unnecessary 2:20
urban 2:14 20:16
urinalysis 22:19
urine 5:25 11:14,23,25 21:25 22:7
22:22
use 13:2 20:8
uses 11:24
U.S 1:19 5:23 9:5,7 15:17 18:12
22:17,25

**V**

Vila 2:3
violated 16:11
violates 17:11
violation 17:15
vs 1:6

**W**

waive 19:19
want 3:8 4:16,17,18 6:7 9:9 10:9,9
10:10,14,15 19:22 22:16 23:25
wanted 9:2 19:11 22:8
wants 4:14
WARDEN 1:7
wasn't 6:10 7:12
wave 7:10
way 3:22 5:7 14:21,21,22 15:24
17:20 18:1
ways 13:17
web 3:23
WEDNESDAY 1:8
week 4:6 13:18 14:2 21:12 23:18
weeks 3:3,14 5:4 8:21 10:22 15:10
20:15
Wendy 9:6
went 8:14 21:10
West 6:24
whiplash 4:13
wish 19:7
witness 22:9
witnesses 2:25 9:20 10:9 19:6,12
won't 4:12
work 12:3 13:25 14:4 24:7
worked 23:25
working 13:23 23:7,15
worse 13:17
wouldn't 3:3 9:3
writing 19:23
written 10:14
wrong 8:15 18:22,22
wrote 9:14

**X**

X 17:13

**Y**

year 10:23
years 2:13 4:10
yesterday 3:4,4 17:17,20 21:7,15

**$**

$70,000 14:20

**0**

09-22680-CIV-MGC 1:3

**1**

1:30 1:8
10 5:7,10
10th 5:9,9
11 23:23
11-2 1:23 24:19
1200 1:16
169 1:16
18 3:14 14:12

**2**

2009 1:7 3:14 5:7,10 14:12
2011 3:24 10:22
26 9:14
26th 10:3

**3**

3rd 12:6
3000 1:14
305/379-6667 1:17
305/523-5158 1:24 24:19
305/789-7412 1:15
305/961-9273 1:20
31 3:24 10:22
33128 1:24 24:19
33131 1:14,17
33132 1:20
34997 23:6

**4**

4th 1:20
400 1:23 24:19

**5**

5 23:17

**6**

6:00 23:23

**7**

7 1:7
7:00 9:22
701 1:14

**8**

8505 23:5

**9**

9 23:17
99 1:20