**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 09-22680-Civ-COOKE**

NICOLE MICHELLE DEFONTES,

      Petitioner

vs.

JOHN T. RATHMAN, Warden FDC-Miami, *et al.*,

      Respondents.

_____/

## ORDER DENYING RESPONDENTS' MOTION FOR RECONSIDERATION

THIS CASE is before me on the Respondents' Motion for Reconsideration of my Order Following the October 7, 2009 Hearing. I have reviewed the Parties' arguments, the record, and the relevant legal authorities. For the reasons explained in this order, the motion for reconsideration is denied.

### I. BACKGROUND

Nicole Defontes filed a Petition for a Writ of Habeas Corpus (ECF No. 1), alleging that the Bureau of Prisons and other Respondents violated her Due Process rights. On October 7, 2009, I held a hearing where it was disclosed that on August 10, 2009, Ms. Defontes had been taken into custody from her home confinement after allegedly failing a drug test. The Bureau of Prisons held an administrative hearing, without Ms. Defontes present, where she was found guilty of failing the drug test. After Ms. Defontes' attorney made attempts to reach out to the Bureau of Prisons, Ms. Defontes was placed in the security-housing unit (commonly referred to as solitary confinement or the SHU) where she was unable to communicate with her attorney. Shortly after that, the Bureau of Prisons held a second hearing where Ms. Defontes lost a

substantial amount of her "good time" credits after she was found guilty again.  Although Ms. Defontes was present at this second hearing, her attorney was not present, nor was she afforded the opportunity to speak with her attorney prior to the hearing.  (*See* Hr'g Tr. 9:14 – 11:8, ECF No. 29-4)

Ms. Defontes' attorney, through a subpoena, obtained a copy of the drug test results from the laboratory that conducted the test.  The laboratory results revealed a trace amount of opiates consist with ingesting poppy seeds.  (*Compare* Pet's Mem. in Support, Ex. 2, ECF No. 10-2, *with* Pet's Mem. in Support, Ex. 1, ECF No. 10-1).  Significantly, the amount of opiates in the lab results was *below* the Bureau of Prisons' regulatory cut-offs.  In other words, the test should not have registered as a "positive."  (*See* Hr'g Tr. 17:16 – 18:20, Oct. 7, 2009, ECF No. 29-4).

Based on the arguments and evidence before me at the October 7, 2009 Hearing, I ordered that Ms. Defontes report to the U.S. Probation Office and remain under the care and supervision of U.S. Probation.  This decision was based, in large part, on the egregious actions that were taken by the Bureau of Prisons, and based on Ms. Defontes' credible allegations of misconduct and retaliation at the Bureau of Prisons' residential re-entry center.  I concluded that, in light of what appeared to be blatant Constitutional violations, the only way to safeguard Ms. Defontes from repeated offenses was to transfer her from the custody of the Bureau of Prisons to the custody of the U.S. Probation Office.

Through the Motion for Reconsideration, the Respondents argue that under Federal Rule of Civil Procedure 60(b)(4) the judgment was void since this Court lacked jurisdiction to enter the Order, and that the judgment should be reconsidered and reversed.  Ms. Defontes argues in response that (1) this Court had jurisdiction to release her under 28 U.S.C. § 2241, (2) that she cannot be compelled to serve anytime in prison after her scheduled release date of November 6,

2009, and (3) the Respondents assertions that she did not complete her drug treatment program are made in bad faith and are an abuse of discretion.  (Pet's Resp. in Opp'n 4-9, ECF No. 38).

## II. LEGAL STANDARDS

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [if] . . . the judgment is void."  Fed. R. Civ. P. 60(b)(4). "Generally, a judgment is void under Rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law. *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (quotation marks and citation omitted).  "[A] judgment is not void because of an error of law." *Dixon v. Kilgore*, 343 F. App'x 530, 532 (11th Cir. 2009).  "[A] mere error in the exercise of jurisdiction does not support relief under Rule 60(b)(4)." *Oakes v. Horizon Fin., S.A.*, 259 F.3d 1315, 1319 (11th Cir.2001) (per curiam); *see also United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661-62 (1st Cir. 1990) (explaining that relief under Rule 60(b)(4) requires a total want of jurisdiction in contrast to an error in the exercise of that jurisdiction).

## III. ANALYSIS

"Habeas corpus is governed by equitable principles." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  Congress has empowered federal courts to dispose of habeas corpus matters "as law and justice require."  28 U.S.C. § 2243.  In this respect, federal courts have broad discretion in fashioning habeas corpus relief. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).  Habeas relief has never been static, narrow, or formalistic; "its scope has grown to achieve its grand purpose – the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

"At its historical core, the writ of habeas corpus has served as a means of reviewing the

legality of Executive detention, and it is in that context that its protections have been strongest."
*Arnaiz v. Warden, Fed. Satellite Low*, 594 F.3d 1326, 1329 (11th Cir. 2010) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). "The typical remedy for such detention is, of course, release." *Id.* (quoting *Munaf*, 553 U.S. at 693).

The Respondents are not asserting that this Court lacks jurisdiction of this matter under 28 U.S.C. § 2241; instead it is my decision to transfer Ms. Defontes from the custody of the Bureau of Prisons to the to the care and control of U.S. Probation that is challenged through the motion for reconsideration. (Mot. for Recons. 5-6, ECF No. 17). My decision to transfer Ms. Defontes was based on the evidence, and credible allegations, that the Respondents had wrongfully arrested Ms. Defontes, wrongfully removed her from home confinement, and wrongfully imprisoned her for two months at FDC-Miami (including seventeen days in solitary confinement) – all based on the Respondents' failure to follow their own regulations regarding the threshold level of positive drug test results. I found particularly egregious Respondents failure to communicate with Ms. Defontes' attorney, and the Respondents refusal to permit Ms. Defontes' attorney to communicate with her.

The Bureau of Prisons' policy and procedure regarding toxicology reports was described in detail at the October 7, 2009 hearing. As explained by the Government, when an initial test indicates a positive result, the laboratory is required to do a confirmation test to get an actual numerical figure.[1] (Hr'g Tr. 17:16 – 18:1, ECF No. 29-4). If the actual figure is below the Bureau of Prisons' threshold standards, the laboratory must then report the result as a negative

---

[1] The initial test merely indicates a positive or negative response, thus the need for the second test to obtain an actual figure to determine whether the amount of opiates meets the threshold minimum established by the Bureau of Prisons. (*See* Hr'g Tr. 17:16 – 18:1, ECF No. 29-4). The reason for having a threshold minimum is to prevent positive reports resulting from legal substances, such as the ingestion of poppy seeds. (*See* Walls Decl. ¶¶ 7-11, ECF No. 10-4).

4

result. (*Id.*).  In this case, under the Bureau of Prisons' policy, Ms. Defontes' drug test should

have been reported as a negative result. (*See id.*).  It was not.[2]

As a result of the Bureau of Prisons failure to follow its own policy, Ms. Defontes was

detained by U.S. Marshals and brought from home confinement to a federal detention center, and

tried twice – once *in absentia*, and a second time without being permitted to even speak with her

attorney.  Based on the record, the only reason that Ms. Defontes was ultimately released from

the federal detention center to the residential re-entry center was because Ms. Defontes' attorney

obtained a copy of the laboratory report demonstrating that the Bureau of Prisons violated its

policy.[3]

In this case the Bureau of Prisons wrongfully convicted Ms. Defontes twice, and if not

for the efforts of her attorney, the Bureau of Prisons would have wrongfully deprived her of her

earned good-time credits and would have wrongfully detained her beyond the time when she

rightfully should have been released – all because the Bureau of Prisons failed to follow its own

policies, and further failed to discover its own mistake.  As I noted at the October 7, 2009

hearing, but for the fact that Ms. Defontes had the means and resources to hire skilled attorneys,

she would most likely still be wrongfully incarcerated.

---

[2]  The actual figures of Ms. Defontes' test results identified an opiate level of 0.1 mcg/mL. (Redwood Toxicology Lab. Report, ECF No. 10-2).  Studies have shown that urine opiate levels following the ingestion of a muffin or pastry containing poppy seeds can range from 1.0 mcg/mL to 4.0 mcg/mL.  (Letter from Wayne B. Ross, Chief Toxicologist to Daniel Fridman (Sept. 28, 2009), ECF No. 10-1).  An individual who occasionally takes codeine or morphine prescription medication, or even an occasional heroin user, would produce urine opiate levels over 10 mcg/mL.  (*See* Walls Decl. ¶¶ 12-13, ECF No. 10-4).  To put Ms. Defontes' results in perspective, her opiate levels were 1000% lower than what would be expected following the consumption of a muffin with poppy seeds, and 10,000% lower than a person taking prescription medicine containing codeine or an occasional heroin user.

[3]  On October 6, 2009, one day before the expedited hearing in this matter, the Bureau of Prisons released Ms. Defontes, not to home confinement where she has previously been residing, but instead to a residential re-entry center.  (Resp't's Notice to Court, ECF No. 11).

Based on the unique factual circumstances presented in this case I fashioned an equitable remedy that satisfied both the law and justice.  In ordering Ms. Defontes away from the control of the Bureau of Prisons, I sought to prevent continued or repeated violations to her Constitutional rights, whether due to negligence or retaliation.  At the same time, ordering Ms. Defontes to report immediately to U.S. Probation, ordering her to comply with all of the terms and conditions of U.S. Probation's supervision, and imposing a curfew on Ms. Defontes, all served to ensure that Ms. Defontes continued to satisfy her obligations to pay her debt to society, while at the same time providing a safe environment for both her and the community.[4]  Before me was a habeas petitioner who had been wrongfully imprisoned for over two months.  My decision sought to undo the injustice that had taken place.  That is precisely the function and purpose of a writ of habeas corpus.  The decision to transfer Ms. Defontes from the custody of the Bureau of Prisons to the custody of U.S. Probation in this Habeas Corpus matter was a resolution that the "law and justice require[d]," and was therefore within the jurisdiction of this Court under 28 U.S.C. § 2243.

---

[4]  It is the mission of the U.S. Probation Service "[t]o bring about long-term positive change of individuals under supervision," to "supervise persons released to the community," and to "direct persons under supervision to services to help them stay on the right side of the law."  Probation and Pretrial Services – Mission, http://www.uscourts.gov/FederalCourts/ProbationPretrialServices/Mission.aspx.  Additionally, U.S. Probation seeks to ensure "offender compliance with court-ordered conditions," and to "protect[] the community through the use of controlling and correctional strategies designed to assess and manage risk."  United States Probation and Pretiral Services: Charter for Excellence, http://www.uscourts.gov/FederalCourts/ProbationPretrialServices/Mission.aspx. The mission and goals of U.S. Probation are consistent with the Bureau of Prisons' Program Statement regarding its Home Confinement Program.  *See* Program Statement: Home Confinement, No. 7320.01 (Sept. 6, 1995), http://www.bop.gov/DataSource/execute/dsPolicyLoc ("Home confinement is a time of testing and an opportunity for inmates to assume increasing levels of personal responsibility while providing sufficient restriction to promote community safety and continue the sanction of the sentence.")

## IV. Conclusion

This case presents a unique set of facts, which do not line up with the "typical" habeas corpus case. Habeas corpus relief, however, has never been static, narrow, or formalistic. *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). My decision to have Ms. Defontes transferred from the custody of the Bureau of Prisons to the to the care and control of the U.S. Probation Department was crafted to satisfy both justice and the law, and was consistent with the jurisdiction bestowed on this Court under 28 U.S.C. § 2243. For these reasons, it is **ORDERED and ADJUDGED** that:

1.  The Respondents' Motion for Reconsideration (ECF No. 17) is **DENIED**. The Petitioner's Motion for Hearing (ECF No. 31) is **DENIED** as moot.

2.  Relatedly, Respondents' Motion for Protective Order (ECF No. 28), which was filed to prevent "Petitioner from taking any additional depositions related to the Respondents' Motion for Reconsideration," is **DENIED** as moot.

3.  In Reviewing the Petition for Writ of Habeas Corpus (ECF No. 1), it appears that all relief sought by the Petitioner has been granted or is now moot. Accordingly, the Clerk is directed to **CLOSE** this matter. The Petitioner has expressed a desire to seek attorney's fees and costs. The Court will retain jurisdiction to hear motions for attorney's fees and costs.

   **DONE and ORDERED** in chambers, at Miami, Florida, this 30th day of September 2010.

_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Counsel of record*